**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 23-cv-00803-REB-TPO

ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY,

   Plaintiff/Counterclaim Defendant,

v.

TREVOR WOGRIN and TIFFANY KEEN,

   Defendants/Counterclaim Plaintiffs.

**ORDER DENYING MOTION FOR DISPOSITIVE SANCTIONS**

**Blackburn, J.**

This matter is before me on defendants' **Motion for Dispositive Sanctions – Spoliation and F.R.C.P. 37** [#71],[1] filed August 26, 2024. I deny the motion.

This action arises from a fire which occurred at the home of defendants Trevor Wogrin and Tiffany Keen. The home was insured by plaintiff Allstate Vehicle and Property Insurance Company ("Allstate"), which includes, relevantly for present purposes, an intentional acts exclusion. By this action, Allstate seeks a declaration that the coverage is excluded under the policy; defendants counterclaim for breach of insurance contract and statutory and common law bad faith.

Defendants purchased the home shortly before the events underlying this lawsuit and were renovating the property themselves. On June 5, 2022, they were continuing demolition in the home with some friends; after Ms. Keen and the friends left, Mr.

---

[1] "[#71]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

Wogrin continued working until around midnight.  The evidence as to how well the house was secured when Mr. Wogrin left is conflicting.

When Mr. Wogrin returned to the home the following morning, the house was filled with smoke, which emanated from a smoldering pile of debris in a lower-level bedroom.  Defendants notified Allstate of the fire that same day.  Allstate then hired an attorney to conduct a subrogation investigation, who in turn engaged a fire investigator, Todd Hedglin, to determine the cause and origin of the fire.  In connection with that investigation, Mr. Hedglin gathered a sample of the fire debris, including three or four charcoal briquettes from the pile itself, as well as five more from a bag nearby; a smoke detector; and a ten to twelve-inch length of sheathed conductor wire.  The conductor previously had been hanging out of a wall near the debris pile, but Mr. Wogrin had cut out both the conductor and a portion of the wall above it before Mr. Hedglin arrived.

Mr. Hedglin examined the conductor under a microscope; three close-up, color pictures of the conductor were appended to his expert report (*see* **Resp. App.**, Exh. 18 at 80-81) and nine comparison photos showing exemplars of arcing are appended to his declaration in response to this motion (*see id.*, Exh. 14 at 12-14 (Attachment 1)).[2]  He found no evidence of arcing, which he stated would have been observable had it occurred.  Together with the fire patterns, he concluded the conductor had not been an ignition source.  (*Id.*, Exh. 18 at 39-40.)  Finding no other potential accidental ignition sources, having eliminated alternative causes, and noting the fire pattern, Mr. Hedglin

---

[2] In their reply brief, defendants argue for the first time that Mr. Hedglin himself spoliated the copper conductor by wiping it clean, allegedly in violation of National Fire Protection Association (NFPA") standards.  (**Reply Br.** at 6.)  Because arguments raised for the first time in a reply brief are deemed waived, I do not consider this assertion.  *See Bordertown, LLC v. AmGUARD Insurance Co.*, 2022 WL 17538186 at *2 (D. Colo. Oct. 5, 2022).

ultimately concluded the fire was incendiary, meaning the fire was "intentionally ignited in an area or under circumstances where and when there should not be a fire," "with the application of an open flame and ignition of charcoal briquets at the area of origin." (*Id.*, Exh. 18 at 5 & n.1.)  He did not conclude, nor was it within his purview to conclude, who may have started the fire.

Meanwhile the Rattlesnake Fire Protection District ("RFPD") also was investigating the cause of the fire.  On June 24, 2022, Fire Chief Cass Kilduff sent a letter addressed to Mr. Hedglin citing Colorado's Fraudulent Claims and Arson Information Reporting Act, §10-4-1001–10-4-1009, C.R.S., requesting "specific, relevant information or evidence . . . which the insurer has in its possession and which relates to the fire loss[.]"[3] §10-4-1003(2), C.R.S.  (*See* **Resp. App.**, Exh. 20.)[4]  In response, Mr. Hedglin produced to Chief Kilduff the physical evidence he collected from the scene, in connection with which both men executed an "Evidence Inventory Transfer" form outlining the evidence forwarded to RFPD.[5]  (*Id.*, Exh. 21; **Motion App.**, Exh. A-1.)[6]  However, it is undisputed that neither Mr. Hedglin nor any representative of Allstate

---

[3]  Mr. Hedglin testified he did not receive this letter personally, but was notified to send the evidence in his possession to Chief Kilduff by someone at Allstate.  (**Motion App.**, Exh. 3 at 134.)

[4]  Given this request, it strikes the court as curious that Chief Kilduff states in his sworn affidavit that RFPD did not suspect arson and concluded its investigation on June 6, 2023, the day defendants discovered the fire, and that his opinion remained unchanged after attending Mr. Hedglin's interviews with Mr. Wogrin and Ms. Keen.  (**Motion App.**, Exh. A ¶¶ 9-10 & 13 at 3.)

[5]  While Chief Kilduff states he did not request physical evidence from Mr. Hedglin (**Motion App.**, ¶ 16 at 4), his letter was broadly worded to encompass "relevant information or evidence deemed important by the authorized agency" (**Resp. App.**, Exh. 20 at 1), and he obviously accepted the physical evidence with which Mr. Hedglin provided him.  Nor does it appear Chief Kilduff complained that Allstate or Mr. Hedglin failed to provide him with the documentary evidence he specifically delineated in the letter.

[6]  The court is frankly flummoxed by defendants' argument that "the letter was sent almost a month before the Evidence was transferred, indicating it did not prompt the transfer."  (**Reply Br.** at 5.)  This is not how linear time works.

specifically told Chief Kilduff he should retain and preserve this evidence. There is no competent evidence that litigation was anticipated at that time.[7]

This lawsuit was filed on March 30, 2023. In June 2023, defendants' fire investigator, Rick Baldwin, contacted Chief Kilduff and requested this evidence for his own inspection. Chief Kilduff advised he had disposed of the evidence the previous April, having himself concluded there was no evidence of arson, and unaware Allstate had initiated this action just three weeks prior. Mr. Baldwin insists the loss of the charcoal briquettes and the conductor has hindered his investigation. In particular, he asserts the inability to examine the conductor in a laboratory setting makes it impossible to rule out an electrical fault as a potential ignition source and that "[t]he sole photograph of the wire included in [Mr. Hedglin's] report was not an adequate substitute for an examination by an electrical expert." (**Motion App.**, Exh. H.)[8]

Based on this series of unfortunate events, defendants now move for entry of judgment against Allstate as a sanction for what they perceive as its intentional, bad faith, spoliation of this evidence. Alternatively, they seek an adverse inference instruction with an irrebuttable presumption that their loss is covered and the intentional acts exclusion of their policy is inapplicable, as well as the exclusion of any evidence relating to or stemming from Mr. Hedglin's investigation, which essentially amounts to

---

[7] In a footnote, defendants suggest Allstate was contemplating litigation as early as November 2022, referencing an unverified note in a log allegedly maintained by a third-party housing vendor. (**Motion App.**, Exh. M.) It is unclear – and defendants do not explain – how this vendor was involved with their insurance claim or how, if at all, the vendor might be related to Allstate. Without such information, the statement appears to be mere hearsay. That this argument was relegated to a footnote further suggests its lack of probative force.

[8] Defendants assert for the first time in their reply that physical inspection of the wire also is mandated by NFPA standards. (**Reply Br.** at 8.) Here again, arguments not raised in the opening brief are waived, and the court does not consider them. (**See** *supra* n.2.)

the same thing, i.e. entry of judgment in their favor.  Despite the breathless hyperbole of defendants' motion, I am unconvinced that the destruction of this evidence was intentional or done in bad faith.  Moreover, I find defendants have failed to prove they have been irreparably prejudiced by the loss of this evidence.  I therefore deny the motion.

To begin, I reject defendants' suggestion that Colorado state law on spoliation, rather than federal law, should govern resolution of this motion.  Although the Tenth Circuit has not definitively decided the issue, it has noted the clear weight of authority is to the contrary,[9] *see Helget v. City of Hays, Kansas*, 844 F.3d 1216, 1226 n.6 (10th Cir. 2017) (citing decisions of the Sixth, Eighth, and Eleventh Circuits so holding, and noting the Second, Fourth, Fifth, and Ninth Circuits also follow this line of authority), although the courts advance different reasons for this determination,[10] *cf. Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005) ("[F]ederal law applies because spoliation sanctions constitute an evidentiary matter."), **cert. denied**, 126 S.Ct. 2967 (2006), **with Hodge v. Wal-Mart Stores, Inc.**, 360 F.3d 446, 449-50 (4th Cir.2004) (applying federal law because power to impose spoliation sanctions is an inherent power of federal courts), **and King v. Illinois Central Railroad**, 337 F.3d 550, 556 (5th Cir.2003) (because federal courts generally apply their own evidentiary rules in diversity matters, federal law governs whether a district court abused its discretion in declining to

---

[9] As defendants themselves implicitly recognize, citing numerous such cases in a lengthy footnote.  (**See Motion** at 9 n.3.)

[10] While the *Helget* court also noted the unpublished decision of a prior panel which referenced Texas state law in deciding a spoliation issue, *see Helget*, 844 F.3d at 1226 n.6, nowhere in that earlier, unpublished decision did the panel address choice-of-law principles or otherwise explain why Texas rather than federal law should apply, *see Rowe v. Albertsons, Inc.*, 116 Fed. Appx. 171, 174 (10th Cir. 2004).

apply spoliation sanctions).  The District of New Mexico has followed this line of authority in a number of cases.  **See Lincoln v. State Farm Fire & Casualty Insurance Co.**, 2020 WL 495373 at *2 (D.N.M. Jan. 30, 2020) (citing cases).  **See also** 22 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure: Evidence* § 5178.3 at 945 & n.10 (2nd ed. 2012) ("Horizontal choice -of-law rules specify that federal law governs [the admission of spoliation evidence] both in diversity and federal question cases.").  Nothing in defendants' arguments convinces me the Tenth Circuit would depart from these well-established precedents.[11]  I therefore look to federal law in deciding the issues raised by and inherent to the motion.

"[L]itigants have a duty to preserve documents that may be relevant to pending or imminent litigation."  **Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc**., 244 F.R.D. 614, 620 (D. Colo. 2007).  A party who despoils evidence may be subject to sanctions pursuant to the court's inherent authority.  **See Chambers v. NASCO, Inc.**, 501 U.S. 32, 49, 111 S.Ct. 2123, 2135, 115 L.Ed.2d 27 (1991) ("[T]he inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct.").[12]  "A spoliation sanction is proper where (1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party

---

[11]  Defendants do not identify what state-law policy considerations the court should consult in applying federal law.  To the extent they note that bad faith is not required to warrant an adverse inference instruction under Colorado law, **see Pfantz v. Kmart Corp.**, 85 P.3d 564, 568-69 (Colo. App. 2003), that "policy" is directly contrary to the law of this federal circuit and thus cannot "inform" the court's decisionmaking.

[12]  Because the destruction of the evidence here did not occur in violation of a specific court order or a court-ordered plan of discovery, Fed. R. Civ. P. 37 is inapplicable here.  **See FED. R. CIV. P.** 37(b)(2)(A) (authorizing sanctions where party "fails to obey an order to provide or permit discovery").  **See also Goodman v. Praxair Services, Inc.**, 632 F.Supp.2d 494, 505-06 (D. Md. 2009); **EEOC v. Jacksonville Shipyards**, 690 F.Supp. 995, 997 (M.D. Fla. 1988).

was prejudiced by the destruction of evidence." ***Burlington Northern & Santa Fe Railway Co. v. Grant***, 505 F.3d 1013, 1032 (10th Cir. 2007).  Sanctions may be imposed even where evidence was destroyed due to mere negligence, so long as the aggrieved party can show it suffered prejudice and the spoliator was on notice that the evidence should be preserved, ***see United States ex rel. Baker v. Community Health Systems, Inc.***, 2012 WL 12294413 at *3 (D.N.M. Aug. 31, 2012), but only proof of bad faith will support an adverse inference instruction; "[m]ere negligence in losing or destroying records is not enough because it does not support an inference of consciousness of a weak case," ***Turner v. Public Services Co. of Colorado***, 563 F.3d 1136, 1149 (10th Cir. 2009).  ***See also Aramburu v. Boeing Co.***, 112 F.3d 1398, 1407 (10th Cir. 1997).  To show bad faith, the evidence must consist of more than conjecture or speculation, ***see Gilbert v. Cosco, Inc.***, 989 F.2d 399, 406 (10th Cir. 1993); "[t]he burden is on the aggrieved party to establish a reasonable possibility, based on concrete evidence rather than a fertile imagination that access to the lost material would have produced evidence favorable to his cause," ***McCargo v. Texas Roadhouse, Inc.***, 2011 WL 1638992 at *5 (D. Colo. May 2, 2011).  ***See also Zbylski v. Douglas County School District***, 154 F.Supp.3d 1146, 1160 (D. Colo. 2015) (burden is on the movant to prove spoliation sanctions appropriate).

     Because spoliation thus exists on "a continuum of fault – ranging from innocence through the degrees of negligence to intentionality," ***Browder v. City of Albuquerque***, 187 F.Supp.3d 1288, 1297 (D.N.M. 2016), district courts have "'substantial weaponry' in their arsenal to shape the appropriate relief for a party's spoliation of evidence," ***Helget***,

844 F.3d at 1225-26. Possible sanctions include striking witnesses; issuing adverse inference instructions; excluding evidence; awarding attorney fees; ordering the culpable party to produce related documents regardless of any claims of privilege or immunity, **see Baker**, 2012 WL 12294413 at *18; allowing the aggrieved party to question a witness in front of the jury about the missing evidence, **Henning v. Union Pacific Railroad Co.**, 530 F.3d 1206, 1220 n 6 (10th Cir. 2008); and imposing costs for creating a substitute for spoliated data, **United States ex rel. Koch v. Koch Industries, Inc.**, 197 F.R.D. 488, 490-91 (N.D. Okla. 1999). While dismissal is also an available remedy, **Helget**, 844 F.3d at 1226, circumstances justifying dismissal are rare:

> Sanctions which preclude the admission of certain evidence or provide for a negative inference in the place of destroyed evidence operate in the same fashion as a default judgment. They intrude into the truth-finding process of a trial, and represent grave steps for a trial judge to take. Such sanctions should be considered with very great restraint.

**Gates Rubber Co. v. Bando Chemical Industries**, 167 F.R.D. 90, 106-07 (D. Colo. 1996) (citation and internal quotation marks omitted). When deciding on an appropriate sanction for a party's spoliation of evidence, "courts have considered a variety of factors, two of which generally carry the most weight: (1) the degree of culpability of the party who lost or destroyed the evidence, and (2) the degree of actual prejudice to the other party." **Jordan F. Miller Corp. v. Mid-Continent Aircraft Services, Inc**, 1998 WL 68879 at *4 (10th Cir., Feb. 20,1998). "[A] court should impose the least onerous sanction that will remedy the prejudice and, where applicable, punish the past wrongdoing and deter future wrongdoing." **Id.**

The first question the court must address is whether Allstate had a duty to

8

preserve the evidence because it knew, or should have known, litigation was imminent. *Grant*, 505 F.3d at 1032.  The entirety of defendants' argument in this regard is that "Allstate knew litigation was imminent because it filed suit." (**Motion** at 3; *see also id.* at 12 ("[Allstate] knew litigation was imminent because it sued.").)  Such just-so reasoning is facile and unilluminating, as it says nothing about *when* Allstate decided to file suit.  As noted above (*see supra*, n. 7), there is no competent evidence in the record before me that Allstate intended to bring suit at the time Mr. Hedglin transferred the evidence to Chief Kilduff in July 2022.  There thus is nothing to suggest Allstate had a duty to preserve the evidence at that time, or, by extension, to tell Chief Kilduff to do so.  Moreover, it is clear Mr. Hedglin did make an effort to preserve the chain of custody by preparing and having Chief Kilduff sign the inventory form.

     Of course, by the time Allstate did file suit in March 2023, it obviously had such a duty.  However, at that point, the items were no longer in its custody or control.  Because a threshold question in determining whether a party is liable for spoliation is whether it had custody of the evidence, it must be shown that the party sought to be sanctioned "had the legal right, or the practical ability, to control the evidence at issue." ***Pinto v. Warn Industries, Inc.***, 2015 WL 12696169 at *2 (D.N.M. Aug. 28, 2015).  Although some courts have held that a party who no longer has control of evidence "still has an obligation to give the opposing party notice of access to the evidence or of the possible destruction of the evidence if the party anticipates litigation involving that evidence," ***Silvestri v. General Motors Corp.***, 271 F.3d 583, 591 (4th Cir. 2001), that exception is a narrow one, ***Ortiz v. City of Worcester***, 2017 WL 2294285 at *4 (D.

Mass. May 25, 2017), and more importantly, is inapplicable where the party had no reason to suspect the evidence would be destroyed, *see Chavez v. Hatterman*, 2009 WL 807440 at *2 (D. Colo. Jan. 20, 2009).

Such is the case here.  Allstate had relinquished control of the evidence to the RFPD, at its request, and with at least some attempt to track the transfer and preserve the chain of custody.  Clearly, it would have been preferable if someone associated with the insurer had told Chief Kilduff to preserve the evidence, but it had no obvious duty to do so at that time it passed the evidence to him.  Moreover, nothing in the record substantiates a conclusion that Allstate had reason to suspect Chief Kilduff would destroy the evidence on his own initiative without informing Allstate he intended to do so.  Thus, the series of events prior to the filing of the lawsuit did not create a duty in Allstate such as would support a sanction for spoliation.

To the extent Allstate might be seen as negligent for not being more proactive in contacting Chief Kilduff to ensure preservation of the evidence once suit was filed,[13] I nevertheless cannot find defendants have been irreparably prejudiced by the loss of the physical evidence.  Although defendants fault Mr. Hedglin for not testing the charcoal briquettes for accelerants, he did not take all the briquettes that were available at the time of his investigation.  Although apparently no briquettes were left at the scene by the time Mr. Baldwin performed his inspection, the loss of that evidence not due to any action or inaction of Mr. Hedglin.

---

[13] Concomitantly, Chief Kilduff also could be portrayed as negligent for failing to alert anyone he intended to destroy the evidence, especially as the inventory transfer form might have been expected to alert him that Mr. Hedglin and/or Allstate had reason to wish to keep track of the evidence.

As for the conductor, although Mr. Baldwin, suggests that the "sole photograph[14] of the wire included in [Mr. Hedglin's report] was not an adequate substitute for an examination by an electrical [engineer]" (**Resp. App.**, Exh. 22 at 21), defendants present no testimony from an actual electrical expert confirming the photographs are inadequate, much less contesting Mr. Hedglin's conclusion that the conductor shows no evidence of arcing.[15]  **See Pepe v. Casa Blanca Inn & Suites LLC**, 2020 WL 5219391 at *3 (D.N.M. April 10, 2020); **Sinclair Wyoming Refining Co. v. Pro-Inspect Inc.**, 2014 WL 12768466 at *1 (D. Wyo. Feb. 10, 2014).   They therefore have failed to meet their burden to establish a reasonable possibility that the evidence lost might have been favorable to them.  **McCargo**, 2011 WL 1638992 at *5.

Moreover, and even if I were to conclude defendants were prejudiced by the loss of this evidence, I would not find them entitled to spoliation sanctions.  Where a party seeks spoliation sanctions, and in particular when a party claims the effect of the spoliation is so serious that dispositive sanctions are warranted, courts are justified in considering the timeliness of the motion.  "[T]here is a particular need for these motions to be filed as soon as reasonably possible after discovery of the facts that underlie the motion."  **TFG-North Carolina, L.P. v. Performance Fibers, Inc.**, 2011 WL 13238434 at *2 (D. Utah Jan. 10, 2011) (footnote and citation omitted).  Among the considerations courts have deemed relevant is the amount of time between when the movant knew of

---

[14]  Contrary to Mr. Baldwin's representation, there were three photos of the copper conductor in Mr. Hedglin's report, not one.  (**Cf. Resp. App.**, Exh. 22 at 21, **with id.**, Exh. 18 at 80-81.)

[15]  For his part, Mr. Hedglin strenuously challenges the notion that an electrical engineer is required to determine whether evidence of arcing is present, averring he is fully qualified to make this determination himself as a fire investigator.  (**Resp. App.**, Exh. 14 ¶¶ 18-25 at 4-5.)

11

the facts underlying the motion and when the motion was filed.  *Pepe*, 2020 WL 5219391 at *4.

Here, defendants knew the evidence had been destroyed in June 2023, noted spoliation was an issue in their answer (**Answer** ¶ 8 at 11 [#12], filed July 28, 2023), stated their intent to seek spoliation sanctions in the Scheduling Order (*see* **Scheduling Order** ¶ 8.A at 10-11 [#22], filed September 26, 2023), and knew their expert felt the loss of the evidence hampered his investigation no later than the date of his report, March 31, 2024.  Yet they waited until six months after that latest date to file this motion.  If the destruction of this evidence was truly as apocalyptic as defendants contend, warranting dispositive sanctions, the court would have expected them to file this motion more expeditiously.  Instead, they did not seek relief until after discovery had closed (on a deadline which had been extended for unrelated reasons) and having filed both a dispositive motion and no less than four Rule 702 motions.  *See id.*  Given those circumstances, I would not be inclined to grant them any type of sanctions, much less dispositive sanctions, based on the loss of evidence.

I thus find and conclude no sanctions are warranted, and the motion will be denied accordingly.  Of course, nothing in this determination precludes defendants from inquiring at trial regarding the destruction of this evidence, nor from arguing to the jury any proper inferences they hope it will draw therefrom.  *See  Session v. Romero*, 2019 WL 156952 at *8-9 (D. Colo. Jan. 10, 2019), *adopted*, 2019 WL 324777 (D. Colo. Jan. 25, 2019).

**THEREFORE, IT IS ORDERED** that defendants' **Motion for Dispositive**

**Sanctions – Spoliation and F.R.C.P. 37** [#71], filed August 26, 2024, is denied.

Dated December 5, 2024, at Denver, Colorado.

BY THE COURT:

Robert E. Blackburn
United States District Judge